**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | No. CR 07-2020-MWB |
| vs. | | **MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S RULE 12(b)(2) MOTION FOR RULING ON ELEMENTS OF OFFENSE CHARGED UNDER 18 U.S.C. § 1028A** |
| HUGO SALAZAR-MONTERO, | | |
| Defendant. | | |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. The Indictment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. The Motion To Determine Elements Of The Offense* . . . . . . . . . . . . 3

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A. Authority To Determine Elements Of The Offense Pre-Trial* . . . . . . . 5
   *B. Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *1.  The defendant's argument* . . . . . . . . . . . . . . . . . . . . . 9
      *2.  The prosecution's response* . . . . . . . . . . . . . . . . . . . . 10
   *C. Interpretation Of § 1028A* . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *1.  Standards for statutory interpretation* . . . . . . . . . . . . . . 11
      *2.  The statute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      *3.  Other courts' interpretations* . . . . . . . . . . . . . . . . . . . 14
         *a.  Hines* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         *b.  Beachem* . . . . . . . . . . . . . . . . . . . . . . . . . . 16
         *c.  Montejo* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         *d.  Other decisions* . . . . . . . . . . . . . . . . . . . . . . 19

     4.     *This court's interpretation* . . . . . . . . . . . . . . . . . . . . . . 20
         a.     *Plain meaning* . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
         b.     *Ambiguity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Whhat is the "plain meaning" of a statute, 18 U.S.C. § 1028A, which imposes additional penalties for "aggravated identity theft"? More specifically, does the statute require that the defendant know only that he or she is *using, possessing, or transferring* a means of identification of another person, or does it require that the defendant also know that the means of identification *is that of another actual person*? The split among the few courts to consider this question suggests the truth of Justice Brennan's observation, "[P]lain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985).

## I. INTRODUCTION

### A. The Indictment

On August 30, 2007, a Grand Jury handed down a two-count Indictment charging defendant Hugo Salazar-Montero with possession of forged documents as evidence of authorized employment and aggravated identity theft. More specifically, **Count 1** of the Indictment, which charges the possession of forged documents offense, charges that, on or about August 8, 2007, Salazar-Montero knowingly possessed one or more documents prescribed by statute or regulation as evidence of authorized employment in the United States, which Salazar-Montero allegedly knew had been forged, counterfeited, falsely

Case 6:07-cr-02020-MWB   Document 10   Filed 10/25/07   Page 2 of 26

made, and otherwise unlawfully obtained, all in violation of 18 U.S.C. § 1546(a). The forged documents identified in **Count 1** are a social security card bearing the last four digits "2893," an IRS Individual Taxpayer Identification Number card bearing the last four digits "8908," and a North Carolina Driver's License bearing the last four digits "0122." **Count 2** of the Indictment, which charges the aggravated identity theft offense, charges that, on or about August 8, 2007, during and in relation to the offense charged in Count 1, Salazar-Montero knowingly possessed, without lawful authority, a means of identification of another person, namely, a social security card number bearing the last four digits of "2893," which was assigned to an actual person, all in violation of 18 U.S.C. § 1028A(a)(1).

Salazar-Montero was arraigned on the charges in the Indictment on September 5, 2007, at which time he entered a plea of not guilty to both charges. The subsequent Trial Management Order (docket no. 5), filed September 19, 2007, set a deadline for nontrial-related motions of twenty-eight days after the date of the arraignment (*i.e.,* October 3, 2007), set a deadline of fourteen days before the commencement of trial for trial-related motions, and set a jury trial for November 5, 2007. Salazar-Montero filed an unresisted motion to continue trial (docket no. 7) on October 9, 2007. The court granted the continuance by order (docket no. 9) dated October 10, 2007, and reset the trial for December 3, 2007.

### B. The Motion To Determine Elements Of The Offense

On October 3, 2007, Salazar-Montero served and filed his Fed. R. Crim. P. 12(b)(2) Motion For Legal Ruling On Elements Of Offense Charged Under 18 U.S.C. § 1028A (Defendant's Rule 12(b)(2) Motion) (docket no. 6), which is now before the

Case 6:07-cr-02020-MWB   Document 10   Filed 10/25/07   Page 3 of 26

court.[1]  The crux of Salazar-Montero's argument in this motion is that, to prove a § 1028A(a)(1) offense, the prosecution must prove that he knew that the means of identification that he possessed belonged to an actual person.  Salazar-Montero candidly acknowledges that this has not been the majority view of courts to construe the statute or, indeed, the view of my colleague in this district, who has rejected such an interpretation of the statute defining the "aggravated identity theft" offense on at least three occasions. *See United States v. Aguilar-Morales*, 2007 WL 2903189 (N.D. Iowa Oct. 2, 2007) (slip op.); *United States v. Garcia-Xclhua*, 2007 WL 2710801 (N.D. Iowa Sept. 13, 2007) (slip op.); *United States v. Ordonez-Alquijay*, 2007 WL 2710805 (N.D. Iowa Sept. 13, 2007) (slip op.).

On October 10, 2007, the prosecution filed its Resistance (docket no. 8) to Salazar-Montero's Rule 12(b)(2) Motion.  In essence, the prosecution argues that, under interpretations of the "aggravated identity theft" statute by the Eighth Circuit Court of Appeals and other courts, it is apparent that the *mens rea* requirement applies only to the *use* of the means of identification, not to whether or not the means of identification belonged to another person.

This matter is now fully submitted.

## II.  LEGAL ANALYSIS

Before the court can determine the extent of the "knowledge" requirement in the "aggravated identity theft" statute, the court must pause to consider whether it has the authority to make such a determination on a pretrial motion.  Consideration of the court's

---

[1] Salazar-Montero's Rule 12(b)(2) Motion was not actually entered on the electronic docket until October 4, 2007.

authority is appropriate not least because another federal district court presented with a pretrial motion raising the question of the proper interpretation of the "knowingly" requirement in § 1028A(a)(1) "declined to render an abstract legal interpretation of the statute before trial." *See United States v. Godin*, 489 F. Supp. 2d 118, 119 (D. Me. 2007) (*Godin II*) (characterizing its previous ruling, *United States v. Godin*, 476 F. Supp. 2d 1 (D. Me. 2007) (*Godin I*)).

### A. Authority To Determine Elements Of The Offense Pre-Trial

Salazar-Montero contends that Rule 12(b)(2) of the Federal Rules of Criminal Procedure permits the court to make a pretrial ruling on the legal issue of the proper elements of the § 1028A offense with which he is charged. The prosecution apparently does not dispute that contention, but the court will, nevertheless, assure itself that it does, indeed, have the authority under Rule 12(b)(2) or otherwise to make the requested ruling at this time.

Rule 12 provides, in pertinent part, as follows:

> **(b) Pretrial Motions**
> * * *
>
> **(2) Motions That May Be Made Before Trial.** A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.
> * * *
>
> **(c) Motion Deadline.** The court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing.
>
> **(d) Ruling on a Motion.** The court must decide every pretrial motion before the trial unless it finds good cause to defer a ruling. The court must not defer ruling on a pretrial

5

> motion if the deferral will adversely affect a party's right to appeal. When factual issues are involved in deciding a motion, the court must state its essential findings on the record.

FED. R. CRIM. P. 12(b)(2), (c), (d). Rule 12(b)(2) has been used, during the pendency of the action, to challenge such things as the jurisdiction of the court, *see United States v. Patton*, 309 F.3d 1093, 1094 (8th Cir. 2002), to assert outrageous government conduct, *see United States v. Nguyen*, 250 F.3d 643, 645-46 (8th Cir. 2001), or to attack the sufficiency of the indictment to allege the elements of the charged offense, *see United States v. Wolff*, 241 F.3d 1055, 1056-57 (8th Cir. 2001); *see also* FED. R. CRIM. P. 12(b)(3) (specifying certain motions that must be made pretrial); FED. R. CRIM. P. 12, Advisory Committee Notes to 2002 Amendments (noting that Rule 12(b) (2) and (3) now more clearly describe which motions may and which motions must be made pretrial). More specifically, for present purposes, my colleague in this district also recently construed a motion to dismiss a § 1028A charge as a motion pursuant to Rule 12(b)(2) to determine the elements of the offense. *See United States v. Ordonez-Alquijay*, 2007 WL 10805, *1 (N.D. Iowa Sept. 13, 2007).

This court also finds that determination of the elements of an offense is a matter that may properly be made pretrial pursuant to Rule 12(b)(2). Rule 12(b)(2) states the standard for issues that can be raised pursuant to the rule to be whether the motion can be determined by the court "without a trial of the general issue." FED. R. CRIM. P. 12(b)(2). Determination of the elements of an offense does not require a trial of the general issue, the defendant's guilt or innocence, although it is more often an integral part of creation of jury instructions. A Rule 12(b)(2) motion to determine the elements of an offense, which *may* be brought pretrial, is also a correlate of what is now expressly described as a Rule 12(b)(3) motion "alleging a defect in the indictment or information," such as a claim that

6

the indictment "fails . . . to state an offense," which Rule 12(b)(3) provides may be heard "at any time while the case is pending." *See* FED. R. CRIM. P. 12(b)(3)(B). The correlation is apparent, because the court cannot determine whether the indictment fails to state an offense unless the court first determines the elements of the offense.

Because Rule 12(b)(2) gives the court the authority to consider pretrial Salazar-Montero's motion to determine elements of the § 1028A offense, the question is whether it is appropriate to "defer a ruling" on his motion until a later point in the proceedings, such as during creation of jury instructions nearer to or in the course of trial. *See* FED. R. CRIM. P. 12(d). As mentioned above, in *United States v. Godin*, a judge of the United States District Court for the District of Maine declined to make a pretrial determination of the elements of a § 1028A offense, because to do so would have been "to render an abstract legal interpretation of the statute before trial." *See Godin II*, 489 F. Supp. 2d at 119 (characterizing its previous ruling in *Godin I*, 476 F. Supp. 2d 1). In its earlier decision, *Godin I*, that court was presented with the question, pretrial, of whether § 1028A requires the prosecution to prove that the defendant actually knew that the unauthorized identification in question was that of another person. *Godin I*, 476 F. Supp. 2d at 1. The court found that there was a factual dispute, and hence a jury question, concerning what the defendant knew at the time of the offense, where the defendant asserted that she did not know that the social security numbers that she had generated for fake identification belonged to another person, but the prosecution asserted that it was "simply incredible" for the defendant to claim that there was no way she could have known that at least one of the seven numbers that she had used for false identification was assigned to another individual. *Id*. at 3. Under these circumstances, the court "decline[d] to make an abstract decision on an issue that ultimately may not reflect the actual facts." *Id*.

7

This court parts company with the decision in *Godin I* on the court's authority to make a pretrial determination of the elements of an offense. First, there is no mention in *Godin I* of Rule 12(b)(2), so that it is possible that the parties simply failed to present any authority for a pretrial determination of the elements of an offense. Second, statutory interpretation, which is what is involved in determining the elements of an offense defined by statute, is a legal question driven by the language of the statute. *See, e.g., Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (the first approach to statutory interpretation is the "plain language" of the statute, which is the "one, cardinal cannon before all others"); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (where the language of the statute is plain, the inquiry ends with the language of the statute); *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006) ("Statutory interpretation is a question of law that we review de novo."). It is not a question in which the "actual facts" of the defendant's conduct have any relevance. To put it another way, determination of the elements of the offense is *not* dependent upon the evidence at trial, but is dependent only upon the language and intent of the statute.

Therefore, the court deems it appropriate to make a pretrial determination, pursuant to Rule 12(b)(2), of the elements of the § 1028A offense charged in this case.

## B. Arguments Of The Parties

With the question of the court's authority to consider the question presented in Salazar-Montero's Rule 12(b)(2) Motion resolved, the court turns to the merits of the Motion. The court begins its analysis of the merits with a summary of the parties' arguments.

Case 6:07-cr-02020-MWB   Document 10   Filed 10/25/07   Page 8 of 26

### 1.    *The defendant's argument*

Salazar-Montero contends that § 1028A requires the prosecution to prove that the defendant knew that the means of identification that he possessed belonged to an actual person. Salazar-Montero acknowledges that the statement of the elements of a § 1028A offense in *United States v. Hines*, 472 F.3d 1038, 1039 (8th Cir. 2007), appears to apply the "knowingly" requirement only to the "use" element, but he asserts that *Hines* is not dispositive of the question here, because there was no dispute in *Hines* that the defendant knew that the means of identification that he used belonged to another actual person. He also concedes that the majority view of other courts on the issue presented here is contrary to his. Nevertheless, he asserts that one court has adopted his construction, citing *United States v. Beachem*, 399 F. Supp. 2d 1156, 1158 (W.D. Wash. 2005). He points out that the court in *Beachem* noted that § 1028A defines "aggravated identity theft" and that the legislative history of the statute indicates that its goal is to provide enhanced penalties for people who steal identities, then reasoned that an intent to deprive another person of property is traditionally an element of a crime of theft.

Salazar-Montero also argues that, if the knowledge requirement of § 1028A is interpreted in the narrow way most courts have adopted, then the conduct punished under the statute is not materially different from the underlying fraudulent activity that the § 1028A offense is meant to enhance. Indeed, he contends that the predicate offense in **Count 1** and the § 1028A offense in **Count 2** here differ only in the sense that the § 1028A offense requires an actual victim. The lack of a knowledge requirement for this different element, he contends, would be inappropriate, where § 1028A defines a separate *offense* not merely an *enhancement*.

9

## 2.     *The prosecution's response*

The prosecution, on the other hand, maintains that § 1028A does not require proof that the defendant knew that the means of identification in question belonged to another person. The prosecution contends that the Eighth Circuit Court of Appeals made clear in *Hines* that the *mens rea* requirement of § 1028A applies only to the *use* of the means of identification. The prosecution also contends that Salazar-Montero's reliance on a single pre-*Hines* decision, *Beachem*, is unavailing in the face of the *Hines* decision and the weight of other case law on the question. The prosecution argues that, even if *Hines* did not decide the "knowledge" question facing this court, *Hines* makes clear that the Eighth Circuit Court of Appeals is unlikely to adopt Salazar-Montero's interpretation. The prosecution also points out that, in *United States v. Montejo*, 442 F.3d 213 (4th Cir.), *cert. denied*, ___ U.S. ___, 127 S. Ct. 366 (2006), the Fourth Circuit Court of Appeals considered and rejected the interpretation in *Beachem*, as has every other court to consider the question.

The prosecution also contends that its construction of § 1028A does not violate double jeopardy principles, because it is clear that Congress intended that § 1028A and any predicate offense be separate offenses. Specifically, the prosecution argues that § 1028A is meant to create a penalty that runs consecutively to the penalty imposed for the underlying predicate felony, such as fraud or misuse of documents in violation of 18 U.S.C. § 1546(a), as charged here. Accordingly, the prosecution argues that simultaneous prosecution of a § 1028A offense and a predicate offense does not violate double jeopardy, because Congress intended to impose multiple punishments for the two offenses.

10

### C.  Interpretation Of § 1028A

The court's determination of the proper interpretation of the "knowledge" requirement in § 1028A begins with a review of the standards for statutory interpretation. The court will then turn to the language and proper construction of the statute in light of those standards.

#### 1.    Standards for statutory interpretation

"Statutory interpretation is a question of law that [appellate courts] review de novo." *Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 537 (8th Cir. 2006). This court has, on numerous occasions, pointed out that the first approach to statutory interpretation is the "plain language" of the statute in question. *See, e.g., B & D Land & Livestock Co. v. Veneman*, 332 F. Supp. 2d 1200, 1210 (N.D. Iowa 2004); *Kinkaid v. John Morrell & Co.*, 321 F. Supp. 2d 1090, 1103 n. 3 (N.D. Iowa 2004) (citing such reiterations); *accord United States v. Cacioppo*, 460 F.3d 1012, 1016 (8th Cir. 2006). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241-42 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102-03 (1897); *Oneale v. Thornton*, 10 U.S. (6 Cranch) 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair*, 489 U.S. at 241 (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)); *Cacioppo*, 460 F.3d at 1016 ("Where the language is plain, we need inquire no further.") (citing *Ron Pair*, 489 U.S. at 241). This "plain language" or "plain meaning" rule of interpretation is not limited to the meaning of individual terms; rather, "[s]uch an inquiry requires examining

11

the text of the statute as a whole by considering its context, 'object, and policy.'" *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 899 (8th Cir. 1999) (quoting *Pelofsky v. Wallace*, 102 F.3d 350, 353 (8th Cir. 1996)). Thus, this court must "effectuate the intent reflected in the language of the enactment and the legislative process," *Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1494 (10th Cir. 1990), *cert. denied*, 499 U.S. 960 (1991), and it is not required to "produce a result demonstrably at odds with the intentions of [the statute's] drafters." *Ron Pair Enters., Inc.*, 489 U.S. at 242 (internal quotation marks omitted).

As this court also mentioned at the outset of this decision, however, "plain meaning, like beauty, is sometimes in the eye of the beholder." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985). Therefore, courts may well disagree on the "plain meaning" of a statute, because more than one reading of the statute may be reasonable or at least possible. *See id.* at 736 (although the statute could be read as the appellate court construed it, the statute could also be read in a different way). Consequently, when a statute is capable of more than one reasonable reading (even readings that have been taken by different courts to be the "plain meaning" of the statute), it is ambiguous on its face. *Id.*; *United States v. White Plume*, 447 F.3d 1067, 1074 (8th Cir. 2006) ("Under statutory interpretation, a statute is ambiguous if it is 'capable of being understood in two or more possible senses or ways.'") (quoting *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001), in turn quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 77 (1985)). When a statute is ambiguous, the court may seek guidance in the statutory structure, relevant legislative history, congressional purposes expressed in the pertinent act, and general principles of law applicable to the circumstances of the statute to determine the appropriate interpretation. *Id.* at 737. Courts will also construe an ambiguous statute to avoid serious constitutional problems. *Edward J. DeBartolo Corp. v. Florida Gulf Coast*

12

*Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (citing *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 499-501, 504 (1979)).

An ambiguous statute defining a criminal offense may also invoke the rule of lenity. *See Rewis v. United States*, 401 U.S. 808, 812 (1971) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."). "The rule of lenity states that a court cannot interpret a federal criminal statute 'so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" *United States v. Speakman*, 330 F.3d 1080, 1083 (8th Cir. 2003) (quoting *United States v. R.L.C.*, 915 F.2d 320, 325 (8th Cir. 1990), *aff'd*, 503 U.S. 291 (1992)). However, the Eighth Circuit Court of Appeals has held that not every ambiguity in a statute requires resolution in the criminal defendant's favor under the rule of lenity, because courts "do not resort to the rule of lenity where . . . [they] can otherwise resolve the ambiguity of the statute." *Bernitt v. Martinez*, 432 F.3d 868, 869 (8th Cir. 2005) (*per curiam*); *accord United States v. Stanko*, 491 F.3d 408, 414 n.5 (8th Cir. 2007) (citing *Bernitt*); *Amador-Palomares v. Ashcroft*, 382 F.3d 864, 868 (8th Cir. 2004) ("'[T]he rule [of lenity] applies only where there still exists an ambiguity after the reviewing court applies traditional methods of statutory construction.'") (quoting *Shelton v. Consumer Prods. Safety Comm'n*, 277 F.3d 998, 1005 n.3 (8th Cir.), *cert. denied*, 537 U.S. 1000 (2002)).

With these standards in mind, the court turns to a review of the language of the statute at issue here.

### 2. *The statute*

The statute at issue here, 18 U.S.C. § 1028A, is denominated "aggravated identity theft," and provides, in pertinent part, as follows:

13

**(a) Offenses.—**

> **(1) In general.**—Whoever, during and in relation to any felony violation enumerated in subsection (c), *knowingly* transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1) (emphasis added).[2] The question here is this: To what does the "knowingly" requirement in § 1028A(a)(1) apply? On that question, the courts, like the parties here, have split.

### 3. Other courts' interpretations

#### a. Hines

If the Eighth Circuit Court of Appeals settled the scope of the "knowingly" requirement in § 1028A in *United States v. Hines*, 472 F.3d 1038 (8th Cir. 2007), as the prosecution contends, then this court is bound by that determination. In *Hines*, the court stated the elements of a § 1028A offense as follows:

> To support a conviction for aggravated identity theft, the government must prove that the defendant (1) knowingly used (2) the "means of identification" of another person (3) without lawful authority (4) during and in relation to a violation of [a specified statute defining a predicate felony]. 18 U.S.C. § 1028A(a)(1), (c)(11); *United States v. Montejo*, 353 F. Supp. 2d 643, 655 (E.D. Va. 2005), *aff'd*, 442 F.3d

---

[2] Felony violations enumerated in subsection (c) include "any provision contained in chapter 75 (relating to passports and visas)." 18 U.S.C. § 1028A(c)(7). The statute Salazar-Montero is charged with violating in **Count 1** of the Indictment in this case, 18 U.S.C. § 1546, is found in chapter 75 of Title 18. Thus, the offense charged in **Count 1** is a predicate offense for the § 1028A(a)(1) violation charged in **Count 2**.

14

213 (4th Cir. 2006), *cert. denied*, --- U.S. ----, 127 S. Ct.
366, 166 L. Ed. 2d 138 (2006).

*Hines*, 472 F.3d at 1039. As the prosecution points out, the Eighth Circuit Court of Appeals restricted the "knowingly" requirement to "used" in this statement of the elements of the offense. *Id.*

That is not the end of the matter, however, because the court notes that there are at least two problems with the prosecution's assertion that *Hines* forecloses Salazar-Montero's interpretation of the "knowingly" requirement. First, although the court in *Hines* expressly stated the "knowingly" requirement only in reference to the "used" element, the court actually stated that the "knowingly" requirement was satisfied by *knowledge that the defendant provided another person's name to police*. *Id.* at 1039-40 (explaining that "the government satisfied the 'knowingly' requirement with Hines's admission that he provided another person's name to police," and citing *United States v. Crounsset*, 403 F. Supp. 2d 475, 483 (E.D. Va. 2005), for the proposition that the "knowingly" requirement is satisfied by proof that the defendant knew the identification was fraudulent). Thus, the court actually applied the "knowingly" requirement to the defendant's knowledge that the means of identification that he used *belonged to another actual person*, which is precisely the interpretation of the "knowingly" requirement asserted by Salazar-Montero. Second, there was no dispute in *Hines* that the defendant knew he was using a means of identification that belonged to another actual person, because the defendant had obtained the means of identification from the person to whom it actually belonged. *Id.* at 1039. Consequently, what *Hines* teaches, for present purposes, is that a defendant's knowledge that the means of identification that the defendant is using belongs to another actual person *will* satisfy the "knowingly" requirement of § 1028A. What *Hines* does *not* make clear is whether such proof of

15

knowledge that the means of identification belongs to another actual person *is required* to satisfy the "knowingly" requirement.

Therefore, the court turns to interpretations of the "knowingly" requirement in § 1028A by other courts for further guidance on the question presented here.

### b. *Beachem*

Salazar-Montero contends that the proper interpretation of the "knowingly" requirement in § 1028A(a)(1) is that it requires proof that the defendant knew that the means of identification that he used, possessed, or transferred, belonged to another actual person, as explained in *United States v. Beachem*, 399 F. Supp. 2d 1156 (W.D. Wash. 2005). In *Beachem*, the court noted that, in *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 79 (1994), the United States Supreme Court held that a statute's qualifiers could be read to modify words to which they were not necessarily adjacent, in order to provide an appropriate level of scienter to justify punishment under the Constitution. *Beachem*, 399 F. Supp. 2d at 1158. The court in *Beachem* suggested that "the somewhat absurd level of punishment reached under the statute" warranted similar treatment of the scienter requirement in § 1028A. *Id.* The court also noted that the Ninth Circuit Court of Appeals had followed *X-Citement* in *United States v. Meek*, 366 F.3d 705, 718 (9th Cir. 2004), to hold that the *mens rea* requirement in 18 U.S.C. § 2422 must be extended to require proof that a defendant had a subjective belief that the person whom he was attempting to engage in sexual activity was a minor. *Beachem*, 399 F. Supp. 2d at 1158. Therefore, following *X-Citement* and *Meek*, the court in *Beachem* concluded that, "in order to justify the additional two years' imprisonment for Defendant that the United States is seeking under the statute, the United States must provide proof that [the defendant] had knowledge that the identification she used belonged to another person." *Beachem*, 399 F. Supp. 2d at 1158. The court explained that, in reaching this decision, the court had been persuaded

16

by the fact that the title of 18 U.S.C. § 1024A is "Aggravated Identity Theft" and by the legislative history of the statute, which speaks directly about "'provid[ing] enhanced penalties for persons who *steal* identities. . . .'" *Id.* (quoting H.R. Rep. 108-528 at *3 (2004), *reprinted in* 2004 U.S.C.C.A.N. 779, with emphasis added by the court). The court noted that an intent to deprive another person of property is traditionally an element of the crime of theft. *Id.* Consequently, the court "s[aw] no reason not to read this traditional *mens rea* requirement into a statute meant to prevent stealing." *Id.*

### c. *Montejo*

As Salazar-Montero concedes, and the prosecution hastens to assert, the decision in *Beachem* stands alone in its interpretation. The representative decision at the opposite pole is *United States v. Montejo*, 442 F.3d 213 (4th Cir. 2006), in which the Fourth Circuit Court of Appeals held "that the defendant need not be aware of the actual assignment of the numbers [improperly used by the defendant in false identification] to have violated [§ 1028A(a)(1)]." *Montejo*, 442 F.3d at 217. The court reached this conclusion, first, on the basis of what it believed to be the plain meaning of the statute:

> We begin with grammar. The word "knowingly" in this case is an adverb that modifies the verbs "transfers, possesses, [and] uses." "Without lawful authority" is an adverbial phrase that also modifies these verbs. The direct object of these transitive verbs is "a means of identification," a nominal phrase that is further modified by the adjectival prepositional phrase "of another person." Together, "transfers, possesses, or uses . . . a means of identification of another person" forms a predicate.
> We think that, as a matter of common usage, "knowingly" does not modify the entire lengthy predicate that follows it. Simply placing "knowingly" at the start of this long predicate does not transform it into a modifier of all the words that follow. Good usage requires that the limiting

17

> modifier, the adverb "knowingly," be as close as possible to
> the words which it modifies, here, "transfers, possesses, or
> uses." *Funk, McMahan and Day, The Elements of Grammar
> for Writers, McMillan*, 1991, Ch. 4.

*Montejo*, 442 F.3d at 215.

Next, in *Montejo*, the court was persuaded that its construction was consistent with its own prior decision in *United States v. Cook*, 76 F.3d 596 (4th Cir.), *cert. denied*, 519 U.S. 939 (1996), in which it had held that "knowingly and intentionally" in 21 U.S.C. § 861(a)(3) did not extend to the age of the minor from whom the defendant received a controlled substance, because the *mens rea* requirement extended only to the object "received a controlled substance," but not to the prepositional phrase "from a person under 18 years of age." *See Montejo*, 442 F.3d at 216 (citing *Cook*, 76 F.3d at 602). As the *Montejo* court explained, "The statute in the case at hand is not grammatically distinguishable from that in *Cook*. The modifier 'knowingly' in each case is adjacent to the words it modifies, as close as it can get." *Id*. The court also rejected the defendant's reliance on *Liparota v. United States*, 471 U.S. 419 (1985), as supporting his argument for the scope of the "knowingly" requirement and ambiguity of the statute as requiring resort to other interpretive guides. *Id*. That argument was appropriately rejected, the court held, because "*Liparota's* discussion of the scope of 'knowingly' should not be understood apart from the Court's primary stated concern: avoiding criminalization of otherwise nonculpable conduct." *Id*.

In *Montejo*, the court also found that it was "supported in [its] reasoning by the legislative history of the statute involved, found at *[200]4 U.S. Code Congressional And Administrative News*, 108th Congress, 2d. Session 2004, House Report, p. 779." *Id*. at 217. The court explained:

18

> That legislative history shows that Congress was concerned
> with aggravated identity theft, exactly what was charged in the
> indictment in this case. Montejo stole the identity of two
> entirely innocent people, the holder of the alien identity
> number, and the holder of the Social Security number.
> Indeed, Congress provided in the statute for a sentence of two
> years in addition to any term of imprisonment otherwise
> provided for a violation of that statute. 18 U.S.C.
> § 1028A(a)(1).

*Montejo*, 442 F.3d at 217. Finally, and briefly, the court found that the rule of lenity did

not apply, because the statute was not ambiguous. *Id.*

### d. Other decisions

My colleague in this district followed *Montejo* in her decisions rejecting the

interpretation of § 1028A offered by the defendant here. *See United States v. Aguilar-*

*Morales*, 2007 WL 2903189 (N.D. Iowa Oct. 2, 2007) (slip op.); *United States v. Garcia-*

*Xclhua*, 2007 WL 2710801 (N.D. Iowa Sept. 13, 2007) (slip op.); *United States v.*

*Ordonez-Alquijay*, 2007 WL 2710805 (N.D. Iowa Sept. 13, 2007) (slip op.). Other

district courts to consider the question have followed the decision of the Fourth Circuit

Court of Appeals in *Montejo* or the underlying district court decision, *United States v.*

*Montejo*, 353 F. Supp. 2d 643 (E.D. Va. 2005), which the Fourth Circuit Court of

Appeals affirmed. *See United States v. Contreras-Macedas*, 437 F. Supp. 2d 69, 75-79

(D.D.C. 2006) (agreeing with the reasoning of the district court in *Montejo*, opining that

"[t]he plain language of the statute cannot be ignored," observing that "the risk runs to the

wrongdoer that the fraudulent identity he possessed actually belonged to a real person,"

and reasoning that "[t]he additional harm that justifies an additional two-year enhancement

is the harm to the real person whose identity was misappropriated"); *United States v.*

*Crounsset*, 403 F. Supp. 2d 475, 483-(E.D. Va. 2005) (although the defendant argued that

19

the prosecution was required to prove that the defendant knew that the identification he possessed belonged to a real person, "[t]he short answer to this argument is that the statute imposes no such requirement on the government," citing the district court decision in *Montejo*, and reasoning that "[t]o read § 1028A otherwise would effectively narrow the proscribed conduct to include an additional element not expressly required by the plain language of the statute and would impose on the government an often insurmountable burden"); *see also Godin II*, 489 F. Supp. 2d at 120-21 (staking out something of a middle ground, by holding that the syntax of the statute permits a construction of the statute that does not require the defendant to know that the means of identification actually belonged to another person and that the "thrust of the caselaw" supported the conclusion that "knowingly" does not modify "of another person," rejecting *Beachem* and partially adopting *Montejo*, but holding that "the language and rationale from the cases strongly suggest that the defendant must *know* that he or she was using *a means of identification without lawful authority* to be convicted under § 1028A," (emphasis added by the court) not just that the defendant knew that he was using, possessing, or transferring the means of identification).

### 4. This court's interpretation

#### a. Plain meaning

The court finds none of the interpretations of the extent of the "knowingly" requirement in § 1028A(a)(1) described above wholly satisfactory. Instead, beginning with the "plain language" of the statute, *see Cacioppo*, 460 F.3d at 1016 (statutory interpretation begins with the language of the statute), this court finds that § 1028A appears to apply the "knowingly" requirement to the entire predicate that follows, *i.e.*, that the defendant "knowingly *transfers, possesses, or uses, without lawful authority, a means of identification of another person*." 18 U.S.C. § 1028A (emphasis added). In its "plain

20

meaning" analysis, the Fourth Circuit Court of Appeals observed that, as a matter of common usage, "knowingly" does not modify the entire lengthy predicate that follows it, but only the "transfers, possesses, or uses" portion, because a modifier should be placed as close as possible to the words that it modifies. *See Montejo*, 442 F.3d at 215. This court, however, observes that "knowingly" has been placed as close as possible to the entire, indivisible predicate: "transfers, possesses, or uses, without lawful authority, a means of identification of another person." This court can see no reasoned basis to subdivide this predicate, so that the "knowingly" requirement applies only to "transfers, possesses, or uses," the nonsensical limitation imposed by the court in *Montejo*,[3] or even just to "using a means of identification without lawful authority," the somewhat more generous construction employed by the court in *Godin II*, 489 F. Supp. 2d at 120. Rather, the plain meaning of the statute, applying the "knowingly" modifier to the entire predicate that follows, and to which it has been closely placed, is that the prosecution must prove that the defendant knowingly transferred, possessed, or used what he knew to be the means of identification of another person, knowing that he had no lawful authority to do so.

Moreover, the analysis of the court in *Montejo* looks at word position in isolation, when a "plain meaning" interpretation is not limited to the meaning of individual terms, but "requires examining the text of the statute as a whole by considering its context, 'object, and policy.'" *Harmon Indus., Inc.*, 191 F.3d at 899 (quoting *Pelofsky*, 102 F.3d at 353). The context of the language in question is a statute defining an offense, "aggravated identity theft," with an enhanced penalty as compared to a predicate offense, "any felony violation enumerated in subsection (c)." 18 U.S.C. § 1028A. The enhanced

---

[3]Nonsensical in that it does not even apply "knowingly" to what is transferred, possessed, or used.

Case 6:07-cr-02020-MWB   Document 10   Filed 10/25/07   Page 21 of 26

penalty applies when the defendant "knowingly" engages in certain presumably more harmful conduct "during and in relation to" that underlying felony violation, such that the defendant has engaged in an offense consisting not just of using a forged means of identification, but *theft* of the identity of another during and in relation to using a forged means of identification. *See* 18 U.S.C. § 1028A (denominating the offense "aggravated identity theft"). As the court in *Beachem* correctly observed, an intent to deprive another person of property is traditionally an element of the crime of theft. *Beachem*, 399 F. Supp. 2d at 1158. One cannot deprive another of property unless one knows that the property belongs to another. Thus, the context, object, and policy of an antitheft statute, *Harmon Indus., Inc.*, 191 F.3d at 899 (directing the court to consider "plain meaning" of the statute as a whole by considering its context, object, and policy), suggest that the "plain meaning" of § 1028A(a)(1) is that the defendant must know that he is depriving another of property. That being so, the "knowingly" modifier logically applies to the part of the predicate defining property as belonging to another. Moreover, this court's reading of the statute "effectuate[s] the intent reflected in the language of the enactment and the legislative process," *see Idarado Mining Co.*, 916 F.2d at 1494, because it reflects the express intent to enhance penalties for identity *theft* during and in relation to use of forged documents.

### b. Ambiguity

This court cannot, however, assert that its reading is the *only* reasonable one. Certainly, few other courts have read the statute in the same way. This court accepts that "plain meaning, like beauty, is sometimes in the eye of the beholder," *Florida Power & Light Co.*, 470 U.S. at 737, and a court's "plain meaning" construction may have something to do with the court's perspective on or perceptions of the proper intent and policy of the statute. Nevertheless, the fact that courts have reached different conclusions

Case 6:07-cr-02020-MWB   Document 10   Filed 10/25/07   Page 22 of 26

about the "plain meaning" of this particular statute strongly suggests that the statute is, in fact, ambiguous. *See id.* at 736 (when a statute is capable of more than one reasonable reading, even readings that have been taken by different courts to be the "plain meaning" of the statute, the statute is ambiguous on its face); *White Plume*, 447 F.3d at 1074 ("Under statutory interpretation, a statute is ambiguous if it is 'capable of being understood in two or more possible senses or ways.'") (quotation marks and citations omitted).

In the alternative to its conclusion about the "plain meaning" of the statute, in light of the possible ambiguity that this court finds in § 1028A(a)(1), the court seeks guidance from the statutory structure, relevant legislative history, congressional purposes expressed in the pertinent act, and general principles of law applicable to the circumstances of the statute to determine the appropriate interpretation. *Id.* at 737. In *Montejo*, the Fourth Circuit Court of Appeals purportedly found in the legislative history support for its reading of the statute, because it read the legislative history to show that Congress was concerned with aggravated identity theft. *Montejo*, 442 F.3d at 217 (citing H.R. Rep. 108-528, 2004 U.S.C.C.A.N. 779). The court in *Montejo* did not, however, explain how reading the statute not to require knowledge that the means of identification belonged to another person addresses the concern of Congress with aggravated identity *theft*, rather than simply a concern with the creation of fake means of identification that happen to use personal data that belongs to another person. This court, on the other hand, notes that the cited portion of the legislative history explains that this statute "addresses the growing problem of identity theft," repeatedly refers to "identity thieves," and explains that "[t]he terms 'identity theft' and 'identity fraud' refer to all types of crimes in which someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception." H.R. Rep. 108-528, 2004 U.S.C.C.A.N. 779. This court reads this legislative history to reflect a concern with *theft* of another person's means of

23

identification, not merely use of a means of identification that happens to belong to another person. Again, an intent to deprive another person of property is traditionally an element of the crime of theft. *Beachem*, 399 F. Supp. 2d at 1158. Thus, in this court's view, the legislative history, and specifically the congressional purposes expressed in the act, as well as general principles of law relating to theft, *see Florida Power & Light Co.*, 470 U.S. at 737, all support reading the statute to require knowledge that the means of identification used, transferred, or possessed belonged to another person.[4]

Finally, because the court believes that resort to canons of statutory interpretation for an ambiguous statute resolve the ambiguity, it is unnecessary to resort to the rule of lenity, *see Bernitt*, 432 F.3d at 869, except in the alternative. Assuming, in the alternative, however, that some ambiguity remains after application of the canons of statutory interpretation for an ambiguous statute above, the rule of lenity would dictate that the increased penalty imposed by § 1028A(a)(1) cannot be based merely on a guess as to what Congress intended the "knowingly" requirement to apply. *Speakman*, 330 F.3d at 1083. Instead, lenity would require the court to interpret § 1028A(a)(1) to require proof that the defendant knew that he possessed a means of identification (the only alternative

---

[4]In reaching this conclusion, the court has not relied on the principle that an ambiguous statute should be construed to avoid serious constitutional problems, *see Edward J. DeBartolo Corp.*, 485 U.S. at 575, because the court is not convinced that the defendant has identified any constitutional problem with the relationship between the elements of a § 1546 offense and a § 1028A offense that would be resolved by applying the "knowingly" requirement to the "of another person" element. Nor has the court relied on *Liparota v. United States*, 471 U.S. 419 (1985), because the court finds no non-culpable behavior that would otherwise be criminalized, or *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 79 (1994), because the enhanced punishment imposed by § 1028A could reasonably be justified by harm to the person to whom the means of identification belonged, regardless of whether the defendant knew that the means of identification belonged to another actual person. *Contra Beachem*, 399 F. Supp. 2d at 1158.

24

of the "transfer[red], possess[ed], or use[d]" alternatives defined by § 1028A(a)(1) that is charged here), that he knew that the means of identification belonged to another person, and that he knew he had no lawful authority to transfer, possess, or use the means of identification.

Thus, either because it is the "plain meaning" of § 1028A(a)(1), because § 1028A(a)(1) is ambiguous and this court's construction arises from canons of statutory interpretation to resolve such ambiguity, or because § 1028A(a)(1) remains ambiguous after application of all canons of statutory interpretation so that the rule of lenity applies, the court concludes that the "knowledge" requirement in § 1028A(a)(1) *does* require proof that the defendant knew that the means of identification that he used belonged to another person.

### III.  CONCLUSION

Upon the foregoing, defendant Salazar-Montero's October 3, 2007, Fed. R. Crim. P. 12(b)(2) Motion For Legal Ruling On Elements Of Offense Charged Under 18 U.S.C. § 1028A (Defendant's Rule 12(b)(2) Motion) (docket no. 6) is **granted**, to the extent that the court holds that the elements of the "aggravated identity theft" offense charged in **Count 2** of the Indictment are the following:  (1) the defendant knowingly possessed a means of identification of another person; (2) the defendant knew that the means of identification belonged to another person; (3) the defendant knew that he was without

Case 6:07-cr-02020-MWB   Document 10   Filed 10/25/07   Page 25 of 26

lawful authority to possess the means of identification; and (4) the defendant possessed the means of identification during and in relation to the offense charged in Count 1.

**IT IS SO ORDERED.**

**DATED** this 25th day of October, 2007.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA